IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JARROD F. ROBINSON, M34062, | ) ) ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) ) |
| TRAVIS BAYLER, LATOYA HUGHES, ANTHONY WILLS, KEVIN REICHERT, UNKNOWN ASST. WARDEN OF PROGRAMS, PLACEMENT OFFICE SUPERVISOR, INTERNAL AFFAIRS LIEUTENANT, GEDDY MCDONALD, | ) ) ) ) ) ) ) ) ) ) Case No. 25-cv-60-RJD |
| Defendants. | ) |

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:**

Plaintiff Jarrod Robinson, an inmate of the Illinois Department of Corrections (IDOC) currently detained at Menard Correctional Center, brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights. The Court found Plaintiff's Complaint insufficient to state a claim (Doc. 10) and Plaintiff filed a timely Amended Complaint (Doc. 11). In the Amended Complaint, Plaintiff alleges prison staff failed to protect him from a brutal attack, and they have refused him protective custody on multiple occasions.

The Amended Complaint (Doc. 11) is now before the Court[1] for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner

---

[1] The Court has jurisdiction to resolve Plaintiff's motions and to screen his Complaint in light of his consent to the full jurisdiction of a magistrate judge and the Illinois Department of Corrections' limited consent to the exercise of magistrate judge jurisdiction as set forth in the Memorandum of Understanding between the Illinois Department of Corrections and this Court.

complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a)-(b). Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* complaint are to be liberally construed. Rodriguez v. Plymouth Ambulance Serv., 577 F.3d 816, 821 (7th Cir. 2009).

### THE AMENDED COMPLAINT

Plaintiff alleges that around April of 2024, he received threats from four separate prison gangs, seeking to force him to engage in nefarious acts on their behalf. They warned that if he refused, he would be beaten. (Doc. 11 at 1). The threats made Plaintiff fearful because he is openly homosexual. He began to write letters to wardens, the placement office supervisor and various security staff explaining his concerns. He never got a written response, and he alleges he was denied protective custody as part of a policy, custom, or practice, and in violation of his right to equal protection. (Doc. 11 at 1-2). He further alleges Defendants Bayler, Hughes, and Wills, maliciously and sadistically denied his appeal of his protective custody denial.

Plaintiff alleges that at some point, he became aware that members of a gang in general population had placed a hit on him because they believed he had run off with drugs intended for a high-ranking gang member. (Doc. 11 at 2). He claims that when he became aware of the specific threat, he wrote letters to Defendants Wills, Reichert, and John Doe Internal Affairs Lieutenant. (Doc. 11 at 2-3). He attached alleged letters to his complaint to Reichert and John Doe, but not to Wills. He claims he also notified Defendant Geddy McDonald of his fear that he was going to be attacked because other inmates were allowed to roam his unit, but McDonald assured him he would

be safe.  McDonald later released him from his cell to take a shower while he was in protective custody "unapproval status."  (Doc. 11 at 2).  During the shower, an approved protective custody inmate was released from his cell, entered the shower, and brutally assaulted Plaintiff.

In relation to the shower attack, Plaintiff also faults Defendants Bayler and Hughes, whom he alleges "maliciously" denied him protective custody in May, July, September, and October of 2024.  (Doc. 11 at 3).

In support of the complaint, Plaintiff submitted a three-page document that purports to reflect the various letters he sent to staff about his concerns.  As for the lead-up to the October 2024 shower attack, he points to three paragraphs from October and November of 2024.  (Doc. 11 at 6).  In two October 4, 2024, paragraphs addressed to Defendants Reichert and the John Doe Lieutenant of Internal Affairs, he alleges that he just learned of a hit from the gangster disciples based on their allegation he stole drugs.  He further alleged, "I've heard that the gang paid someone in P.C. to carry out the hit on me for some drugs. I do not know who the person is or persons!" (Doc. 11 at 6).  Plaintiff asked to be single-celled and to be allowed to shower alone for his safety. In the November 4, 2024, submission to Wills, he alleged he was repeatedly maced in the protective custody shower by McDonald, but no one came to his assistance.

Based on the allegations in the Complaint the Court designates the following counts:

**Claim 1:** **Eighth Amendment deliberate indifference or failure to protect claim against Defendants Reichert, John Doe Lieutenant of Internal Affairs, and McDonald for refusing Plaintiff protection when he informed them that he was subject to a hit in October of 2024;**

**Claim 2:** **Eighth Amendment failure to protect claim against Wills, Bayler, Hughes, the Placement Office Supervisor, or the Unknown Assistant Warden of Programs for their role in allegedly denying Plaintiff protective custody from April 2024 to the filing of this suit.**

The parties and the Court will use these designations in all future pleadings and orders unless otherwise directed by a judicial officer of this Court. Any claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under *Twombly*. *See* Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim that is plausible on its face").

## DISCUSSION

To establish a failure to protect claim under the Eighth Amendment, a plaintiff must allege "(1) that he was incarcerated under conditions posing a substantial risk of serious harm and (2) that the defendants acted with deliberate indifference to his health or safety." *Santiago v. Walls*, 599 F.3d 749, 756 (7th Cir. 2010). Under the Eighth Amendment, correctional officials have a constitutional duty to protect inmates from violence. *Farmer v. Brennan*, 511 U.S. 825, 844 (1994). But "prisons are dangerous places. Inmates get there by violent acts, and many prisoners have a propensity to commit more." *Grieveson v. Anderson*, 538 F.3d 763, 777 (7th Cir. 2008). A failure to protect claim cannot be predicated "merely on knowledge of general risks of violence in a detention facility." *Brown v. Budz*, 398 F.3d 904, 913 (7th Cir. 2005). "[N]egligence, or even gross negligence does not equate to deliberate indifference" and does not state a claim for a violation of the Eighth Amendment. *Johnson v. Dominguez*, 5 F.4th 818, 825 (7th Cir. 2021); *see also, Saunders v. Tourville*, 97 Fed. App'x 648, 649 (7th Cir. 2004) (finding that an inmate failed to state a failure to protect claim for being labeled as a snitch where he did not identify any physical harm that occurred, and instead simply stated he was at risk of physical harm).

A plaintiff must establish that "the defendant had actual knowledge of an impending harm easily preventable, so that a conscious, culpable refusal to prevent the harm can be inferred from

the defendant's failure to prevent it." *Santiago v. Wells*, 599 F.3d 749, 756 (7th Cir. 2010). As described in one case:

> To establish deliberate indifference on the part of the defendants sued individually, Klebanowski needed to show that the officers acted with the equivalent of criminal recklessness, in this context meaning they were actually aware of a substantial harm to Klebanowski's health or safety, yet failed to take appropriate steps to protect him from the specific danger. Klebanowski testified during his deposition that he told officers twice on September 8 that he was afraid for his life and he wanted to be transferred off the tier. Those statements, and the officers' knowledge of the first beating, are the only pieces of evidence in the record that can assist Klebanowski in his attempt to show that the officers were aware of any risk to him. We have previously held that statements like those made by Klebanowski are insufficient to alert officers to a specific threat. Butera, 285 F.3d at 606 (deeming insufficient to establish deliberate indifference statements by a prisoner that he was "having problems in the block" and "needed to be removed"). In *Butera*, we deemed the inmate's statements insufficient to give notice to the officers because they did not provide the identities of those who threatened the inmate, nor state what the threats were. Id.
> The facts of this case make clear our reason for requiring more than general allegations of fear or the need to be removed. By Klebanowski's own testimony, the officers knew only that he had been involved in an altercation with three other inmates, and that he wanted a transfer because he feared for his life. He did not tell them that he had actually been threatened with future violence, nor that the attack on September 8 was inflicted by gang members because of his non-gang status. Without these additional facts to rely on, there was nothing leading the officers to believe that Klebanowski himself was not speculating regarding the threat he faced out of fear based on the first attack he suffered. This lack of specificity falls below the required notice an officer must have for liability to attach for deliberate indifference.

*Klebanowski v. Sheahan*, 540 F.3d 633, 639-40 (7th Cir. 2008) (footnote omitted).

Failure to protect claims are difficult to assess at initial review. In the original complaint, Plaintiff did not provide details about any explicit threats to his safety. However, in the amended complaint, he now explains that around October of 2024, he became aware of a threat by a specific gang, meant to be carried out by an individual housed in protective custody. He attempted to alert John Doe Lieutenant of Internal Affairs and Kevin Reichert to this risk via written correspondence on October 4, 2024. The correspondence detailed the precise nature of the threat and sought single-

cell status and single shower privileges. Plaintiff claimed in the body of his complaint that he also wrote Wills prior to the attack, but he tendered no proof of that. Plaintiff alleges that either on October 14, 2024, when he was attacked in the shower, or shortly before, he told Defendant McDonald that he feared for his safety, but McDonald did nothing and released him to shower where he was attacked. This series of allegations is detailed enough to support a failure to protect claim against Defendants John Doe Lieutenant of Internal Affairs, Kevin Reichert, and Geddy McDonald because it suggests they had advance knowledge of a particular threat.

By contrast, Plaintiff's other allegations targeted at Defendants Bayler, Hughes, Wills, the Unknown Assistant Warden of Programs, and the Placement Office Supervisor are still too vague to support a valid claim. The alleged correspondence that Plaintiff wrote to these individuals between April and November of 2024 speaks of general concerns for his safety, and his desire for protective custody, but it does not speak in terms of identifiable explicit threats like those surrounding the October 14 attack. Plaintiff alleges at various points that he was denied protective custody based on some internal policy, custom, or practice, but says nothing more about who created the policy, or what exactly it states. As the Court noted in the review of Plaintiff's initial complaint, it is also significant that at the time he was attacked, he was in the protective custody area, and not general population. Although he may not have been approved for protective custody at that point (and he may still not be approved), most of his pleas for relief from April to the October attack related purely to his request to be in approved protective custody and not in general population. Given that he was in some form of protective custody status at the time of the single attack he describes, and because the attack was carried out by an approved protective custody inmate, it is unclear that even the protection he sought from these individuals would have prevented the harm that occurred. The threat he posed to them appeared to be one associated with general

population housing, and he does not indicate he was housed in general population for any significant amounts of time from April to October 2024. As such, his claims against these individuals are still insufficient to support a failure to protect claim.

Plaintiff also mentions the Fourth and Fourteenth Amendments in passing, but he does not have any factual assertions that support either theory. At most, he alleges the denial of protective custody meant he and other similarly situated individuals were denied safety. To establish that he was discriminated against in violation of the Equal Protection Clause, Plaintiff must establish the following: 1) he "is a member of a protected class"; 2) he is "otherwise similarly situated to members of the unprotected class"; and 3) he "was treated differently from members of the unprotected class." *McNabola v. Chicago Transit Auth.*, 10 F.3d 501, 513 (7th Cir. 1993) (*quoting McMillian v. Svetanoff*, 878 F.2d 186, 189 (7th Cir. 1989)). Plaintiff's bare allegations suggest he may be a member of a protected class, but they do not suggest differential treatment from others not in the protected class. As such, his bare allegations do not support a plausible Equal Protection claim.

## DISPOSITION

**IT IS HEREBY ORDERED THAT Claim 1** of the Amended Complaint survives initial review against Defendants Reichert, McDonald, and John Doe Lieutenant of Internal Affairs. By contrast, **Claim 2** is insufficient to state a claim against Defendants Bayler, Hughes, Wills, Unknown Assistant Warden of Programs, and the Placement Office Supervisor. The Clerk of Court is **DIRECTED** to **TERMINATE** Bayler, Hughes, Unknown Assistant Warden of Programs, and the Placement Office Supervisor. Anthony Wills shall remain in this case in official capacity only to help identify the John Doe Lieutenant of Internal Affairs.

**Plaintiff must file a Notice within 21 days** containing any identifying information he has about John Doe Lieutenant of Internal affairs such as nicknames, physical appearance, and shift assignments. The Court will then direct Wills to respond and Plaintiff will have a deadline to substitute a named party.

The Clerk of Court is **DIRECTED** to prepare for Defendants Reichert, McDonald, Wills (official capacity only to identify John Doe): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint (Doc. 11), and this Memorandum and Order to Defendants' place of employment as identified by Plaintiff. If Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on Defendant, and the Court will require Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a Defendant cannot be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merits Review Order.**

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* was granted.  *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that he is under a continuing obligation to inform the Clerk of Court and each opposing party of any address changes; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than 14 days after a transfer or other change of address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for failure to prosecute.  FED. R. CIV. P. 41(b).

The Clerk of Court shall enter the standard HIPAA protective order.

**IT IS SO ORDERED.**

**DATED: 5/1/2025**

*s/ Reona J. Daly*
**REONA J. DALY**
**U.S. Magistrate District Judge**

### Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least 60 days from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take 90 days or more. When all of the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit any evidence to the Court at his time, unless otherwise directed by the Court.

The Court wishes to remind the Plaintiff that litigation is often viewed a series of hurdles that the Plaintiff must clear to get to another hurdle. Initial screening is such a hurdle, but it is a very low one for the Plaintiff to clear.  As noted above, surviving initial screening only requires

the bare statement of a claim that, if proven, could entitle Plaintiff to some relief. At trial, he will need to prove by a preponderance of evidence that the facts alleged actually occurred and that those facts satisfy the legal requirements for recovery. Trial is the highest and most difficult of hurdles for any Plaintiff to clear.