IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| JARROD F. ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:25-cv-00060-RJD |
| | ) | |
| KEVIN REICHERT, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

**DALY, Magistrate Judge:[1]**

This matter comes before the Court on the Motion for Summary Judgment on the Issue of

Exhaustion (Doc. 34) filed by Geddy McDonald and Kevin Reichert. For the reasons explained

below, the motion is **GRANTED**.

## Background

On January 15, 2025, Plaintiff Jarrod Robinson, an inmate of the Illinois Department of

Corrections ("IDOC"), brought this civil rights action pursuant to 42 U.S.C. § 1983 for alleged

deprivations of his constitutional rights at Menard Correctional Center ("Menard"). (Docs. 1 &

13). The Court found the Complaint insufficient to state a claim, and Robinson filed an Amended

Complaint (Docs. 11 & 13). In the Amended Complaint, Robinson alleged that prison staff failed

to protect him from a brutal attack, and they refused him protective custody on multiple occasions.

Relevant to this motion, Robinson alleged that around April of 2024, he received threats

from four separate prison gangs, seeking to force him to engage in nefarious acts on their behalf.

---

[1] This case has been assigned to the undersigned to conduct all proceedings through the parties' consent
pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. (Doc. 24).

They warned that if he refused, he would be beaten. (Doc. 11, p. 1). The threats made Plaintiff fearful because he is openly homosexual. He began writing letters to wardens, the placement office supervisor, and various security staff, explaining his concerns, but he never got a written response. He alleged that he was also denied protective custody as part of a policy, custom, or practice, and in violation of his right to equal protection. (*Id.* at 1-2).

At some point, Robinson became aware that members of a gang in the general population had placed a hit on him because they believed he had run off with drugs intended for a high-ranking gang member. (*Id.* at 2). He claimed that when he became aware of the specific threat, he wrote letters to Defendants Wills, Reichert, and John Doe, an Internal Affairs Lieutenant. (Doc. 11 at 2-3). He also notified Defendant Geddy McDonald of his fear that he was going to be attacked because other inmates were allowed to roam his unit, but McDonald assured him he would be safe. McDonald later released him from his cell to take a shower while he was in protective custody "unapproval status." (Doc. 11 at 2). During the shower, an approved protective custody inmate was released from his cell, entered the shower, and brutally assaulted Robinson.

Robinson also represented in the original complaint that he submitted two grievances regarding those claims: Grievance K4-1024-5634 about being forced to take a shower with "approved protective custody" and being attacked, and K4-0924-4552 about being denied protective custody by the Administrative Review Board ("ARB"). (Doc. 1, p. 3). He noted that the "CAO" still had not ruled on any of those grievances. (*Id.*).

After threshold review of the Amended Complaint, Robinson was allowed to proceed on the following count:

> **Claim 1:** Eighth Amendment deliberate indifference or failure to protect claim against Defendants Reichert, John Doe, Lieutenant of Internal Affairs,

**and McDonald for refusing Plaintiff protection when he informed them that he was subject to a hit in October of 2024**

(Doc. 13, pp. 3-7).[2] Thereafter, the Court dismissed John Doe, Lieutenant of Internal Affairs, due to Robinson's failure to respond to two Court orders directing him to identify the unnamed defendant. (Docs. 13, 21 & 23).

On January 12, 2026, Defendants moved for summary judgment, arguing that Plaintiff failed to exhaust his administrative remedies before initiating this action. (Doc. 34). The motion includes a Statement of Material Facts with proper citation to the record in accordance with Rule 56 of the Federal Rules of Civil Procedure and Local Rule 56.1. (Doc. 34, pp. 2-4). Per the Court's direction, Defendants also filed an Amended Rule 56 Notice advising Robinson of the consequences of failing to respond to the motion.[3] (Docs. 35 & 37). Robinson did not respond. Accordingly, the Court adopts Defendants' factual allegations to the extent supported by admissible evidence. Fed. R. Civ. P. 56(e) (providing that if a party fails "to properly address another party's assertion of fact" the court can "consider the fact undisputed for purposes of the motion."); *see also* Local Rule 56.1(g) ("All material facts set forth in a Statement of Material Facts . . . shall be deemed admitted for purposes of summary judgment unless specifically disputed"). The Court still views those facts in the light most favorable to Robinson.

---

[2] The Court also dismissed Count 2 against Defendants Bayler, Hughes, Wills, Unknown Assistant Warden of Programs, and the Placement Office Supervisor. (Doc. 13, pp. 3-7).

[3] The Amended Rule 56 Notice (Doc. 37) inaccurately states that failure to file a timely response to a motion for summary judgment "may, in the Court's discretion, be considered an admission of the merits of the motion." (Doc. 37, p. 3). Defendants likely refer to either a former version of Local Rules or Local Rule 7.1(a)(5), which provides that "failure to file a timely response to a *non-dispositive* motion may be deemed consent to the relief as requested." A motion for summary judgment, however, is a dispositive motion and therefore, Local Rule 7.1(a)(5) is inapposite. Rather, Local Rule 56.1 sets forth the consequences of a plaintiff's failure to timely and properly respond to a motion for summary judgment. Despite this discrepancy, the Amended Rule 56 Notice adequately advised Haywood of the consequences of his failure to respond to a motion for summary judgment under Fed. R. Civ. P. 56.

## Analysis

### *Summary Judgment Standard*

Summary judgment is appropriate only if the moving party can demonstrate "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *see also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005). The moving party bears the initial burden of demonstrating the lack of any genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once a properly supported motion for summary judgment is made, the adverse party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Estate of Simpson v. Gorbett*, 863 F.3d 740, 745 (7th Cir. 2017) (quoting *Anderson*, 477 U.S. at 248). In considering a summary judgment motion, the district court views the facts in the light most favorable to and draws all reasonable inferences in favor of the nonmoving party. *Apex Digital, Inc. v. Sears, Roebuck & Co.*, 735 F.3d 962, 965 (7th Cir. 2013) (citation omitted). While courts generally may not resolve factual disputes on a motion for summary judgment, when the motion pertains to a prisoner's exhaustion of administrative remedies, the Seventh Circuit has instructed courts to conduct an evidentiary hearing and resolve contested issues of fact regarding a prisoner's efforts to exhaust. *Pavey v. Conley*, 544 F.3d 739, 742 (7th Cir. 2008), *as amended on denial of reh'g and reh'g en banc* (Sept. 12, 2008), *and abrogated by Perttu v. Richards*, 605 U.S. 460, 145 S. Ct. 1793, 222 L.

Ed. 2d 108 (2025).[4] A hearing, however, is not necessary when material facts are not in dispute. *See Doss v. Gilkey*, 649 F. Supp. 2d 905, 912 (S.D. Ill. 2009) (no hearing required where there are "no disputed facts regarding exhaustion, only a legal question").

***Exhaustion Requirement***

Under the Prison Litigation Reform Act ("PLRA"), prisoners are required to exhaust available administrative remedies before filing lawsuits in federal court. 42 U.S.C. § 1997e(a). To comply with the PLRA exhaustion requirement, an inmate must follow the prison's grievance process. *Jones v. Bock*, 549 U.S. 199, 218, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007) (citation omitted). The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler,* 438 F.3d 804, 809 (7th Cir. 2006). "[A] prisoner who does not properly take each step within the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "[A] suit filed by a prisoner before administrative remedies have been exhausted must be dismissed; the district court lacks discretion to resolve the claim on the merits, even if the prisoner exhausts intra-prison remedies before judgment." *Perez v. Wisconsin Dep't of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). "[A]ll dismissals under § 1997e(a) should be without prejudice." *Ford v. Johnson*, 362 F.3d 395, 401 (7th Cir. 2004).

An inmate in the custody of the IDOC must first submit a written grievance within 60 days after the discovery of the incident, occurrence, or problem to his or her institutional counselor unless certain discrete issues are being grieved. 20 Ill. Admin. Code § 504.810(a). "The grievance shall contain factual details regarding each aspect of the offender's complaint, including what

---

[4] This case does not implicate *Perttu* because Plaintiff has not argued that his attempts to exhaust his administrative remedies were hindered by Defendants' unconstitutional conduct as alleged in the Complaint.

happened, when, where and the name of each person who is the subject of or who is otherwise involved in the complaint." *Id.* § 504.810(c). An inmate who does not know the names of individuals involved in the complaint must include as much descriptive information about the individual as possible. *Id.*

If the complaint is not resolved through a counselor, the grievance is considered by a Grievance Officer who must render a written recommendation to the CAO — usually the Warden — within two months of receipt, "when reasonably feasible under the circumstances." *Id.* § 504.830(e). The CAO then advises the inmate of a decision on the grievance. *Id.* An inmate may appeal the decision of the CAO in writing within 30 days to the ARB for a final decision. *Id.* § 504.850(a); *see also Dole*, 438 F.3d at 806–07. "The appeal must be received by the [ARB] within 30 days after the date of the decision." *Id.* The ARB will submit a written report of its findings and recommendations to the Director, who shall review the same and make a final determination within six months of receipt of the appeal. 20 Ill. Admin. Code § 504.850(d) and (e).

An inmate may request that a grievance be handled as an emergency by forwarding it directly to the Chief Administrative Officer. *Id.* § 504.840. If it is determined that there exists a substantial risk of imminent personal injury or other serious or irreparable harm, the grievance is handled on an emergency basis, which allows for expedited processing of the grievance by responding directly to the offender. *Id.* Inmates may further submit certain types of grievances directly to the ARB, including grievances related to protective custody, involuntary administration of psychotropic medication, and certain issues relating to facilities other than the inmate's currently assigned facility. *Id.* at § 504.870.

Further, the Seventh Circuit has explained that, to satisfy its purpose and comply with the

PLRA requirements, the grievance must contain sufficient information to allow prison officials "time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 525, 122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002). A grievance does not comply with the PLRA requirements when it does not raise the same claim as the lawsuit and does not provide sufficient information from which to infer that the defendants are the targets. *Brown v. Briggs*, No. 22-1963, 2023 WL 3674669, at *2 (7th Cir. May 26, 2023). Such a disconnect between a grievance and the complaint deprives the federal courts of jurisdiction to hear the claims. *Bowers v. Dart*, 1 F.4th 513, 518 (7th Cir. 2021); *see also Shipp v. Lobenstein*, No. 23-1923, 2023 WL 8868501, at *2 (7th Cir. Dec. 22, 2023) ("To exhaust remedies, a prisoner must follow the prison's administrative rules, . . . including the level of detail required by them[.]"). Still, failing to name the defendants in a grievance is "a mere technical defect" where the inmate sufficiently describes the alleged wrongdoing to allow prison officials a fair opportunity to respond. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011).

Moreover, the PLRA exhaustion requirement "hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust unavailable ones." *Reid v. Balota*, 962 F.3d 325, 329 (7th Cir. 2020) (quoting *Ross v. Blake*, 578 U.S. 632, 136 S. Ct. 1850, 1858, 195 L. Ed. 2d 117 (2016) (alteration in original)). The administrative process becomes "unavailable," for instance, when prison officials fail to respond to a prisoner's grievance, thus preventing that prisoner from exhausting administrative remedies. *Dole*, 438 F.3d at 809.

### Discussion

Based on that record, and Robinson's representation in the original complaint, Robinson

submitted only one grievance regarding the surviving claim against Defendants Reichert and McDonald: Grievance K4-1024-5634, dated October 24, 2024.[5] Therein, he alleged that on October 14, 2024, despite his single shower status, McDonald and other unnamed correctional officers placed him in a group shower, where he was assaulted. (Doc. 34, ¶ 8). He stated that he was thereafter improperly issued a disciplinary ticket for fighting with another inmate and disobeying a direct order. (Doc. 34-2, pp. 21-2). He asked to be provided with adequate medical treatment and that McDonald be held accountable for his "[]actions" and the harm Robinson sustained. (*Id.*).

Defendants state in their motion that the grievance was returned to Robinson by the first-level counselor on October 31, 2024, and received at the second level at the grievance office on the same day. (Doc. 34, ¶ 8). This is not entirely supported by the cited record, which does not indicate when the first-level counselor reviewed the grievance or returned it to Robinson. (Doc. 34-3, p. 4, Doc. 34-2, pp. 21-23). The cited record, however, shows that the Grievance Officer received the grievance for second-level review on October 31, 2024, and that a receipt was sent to Robinson on that same date. (*Id.*). On January 31, 2025, the Grievance Officer recommended that the grievance be denied. (Doc. 34, ¶ 8; Doc. 34-2, p. 21). The CAO concurred on February 4, 2025. (*Id.*). Plaintiff's Administrative Review Board records indicate the ARB did not receive an appeal of this grievance. (Doc. 34, ¶ 8; Doc. 34-5; Doc. 35-6, pp. 4-5).

Defendants argue that Robinson failed to comply with the PLRA requirement because the

---

[5] Robinson stated in the original complaint that he also filed Grievance K4-0924-4552 on September 16, 2024, about being denied protective custody by the Administrative Review Board ("ARB"). This, however, is a separate claim that has already been dismissed. Further, because this grievance predates the October 17, 2024, assault, it could not have exhausted Robinson's administrative remedies as Count 1 (Doc. 1, p. 3).

only grievance he submitted regarding his deliberate indifference claim against McDonald and Reichert was not fully exhausted by January 15, 2025, when Robinson initiated this action, or by March 17, 2025, when he filed the Amended Complaint. The Court agrees.

There is no dispute that Robinson initiated this action before receiving a response to Grievance K4-1024-5634 at the second level of review by the CAO. The regulations provide that a Grievance Officer must render a written recommendation to the CAO — usually the Warden — within two months of receipt, "when reasonably feasible under the circumstances." *Id*. 20 Ill. Admin. Code §504.830(e). Here, the Grievance Officer received the grievance on October 31, 2025, and issued a recommendation on January 31, 2026, 96 days later. While this exceeds the recommended two months for a second-level recommendation, this timeframe is not mandatory. The Seventh Circuit has found, for instance, that a two-month period of silence rendered administrative remedies unavailable only where responses from the ARB suggested to the inmate that no one was looking into his grievances. *See Reid*, 962 F.3d at 329. On the other hand, a six-month delay in the grievance officer's response does not necessarily render the remedies unavailable, as officials may still be investigating a complex case. *See Ford*, 362 F.3d at 400; s*ee also Matthews v. Pitzen*, No. 24-1358, 2024 WL 4850498, at *2 (7th Cir. Nov. 21, 2024) (processing delays do not relieve a prisoner of the obligation to exhaust).

Here, the Grievance Officer's response at the second level indicates that there was a disciplinary proceeding related to the attack on October 17, 2024, which could justify the delayed response. Importantly, Robinson has not responded to the motion for summary judgment and, therefore, has not raised a factual dispute as to whether the grievance process was rendered unavailable.

In contrast, Defendants have established that the administrative process was available to Robinson while in Menard. Defendants pointed to another grievance, which Robinson properly exhausted at all levels of review. Specifically, Robinson submitted Grievance K4-0424-1741 on April 9, 2024, alleging that he had been awaiting medical attention/treatment since he was transferred from Shawnee Correctional Center to Menard Correctional Center on January 18, 2024. (Doc. 34-2, pp. 6-8 & 19). The grievance was returned to Robinson by the grievance officer on the same date with a mixed finding, signed by the CAO on June 27, 2024, and returned to the Plaintiff on July 1, 2024. (*Id.*). Unlike Grievance K4-1024-5634, Robinson did appeal this grievance to the ARB. Plaintiff's ARB Board records indicate the ARB received the grievance, and on July 24, 2024, provided a response, noting the appeal was denied, finding the issue was appropriately addressed by the facility's Administration. (*Id.*).

Accordingly, the Court finds that Robinson failed to exhaust the available administrative remedies before initiating this action. Therefore, Defendants are entitled to summary judgment.

### Conclusion

For these reasons, Defendants' Motion for Summary Judgment on the  Issue of Exhaustion (Doc. 34) is **GRANTED**. This case is **DISMISSED without prejudice**. The Clerk of Court is **DIRECTED** to enter judgment accordingly and close the case.

**IT IS SO ORDERED.**

**DATED: August 10, 2026**

**Hon. Reona J. Daly**
**United States Magistrate Judge**